LAVIN v. LYNCH.

1. VENDOR AND PURCHASER—VENDOR'S LIEN—EQUITY.
    The vendor of real estate who takes no security for the
    payment of the purchase price has an equitable lien for
    such purchase money upon the lands so sold.

2. SAME—CONSIDERATION.
    Such liens exist independently of any express agreement,
    and courts of equity enforce them, on the principle that
    a person, having gotten the estate of another, ought not
    in conscience, as between them, to be allowed· to keep it
    and not pay the consideration.

3. SAME—EQUITABLE TITLE.
    The lien attaches notwithstanding the fact that the sale
    did not convey a title in fee, or a legal title, but only an
    equitable right or interest.

4. ASSIGNMENTS—MORTGAGES—NOTES.
    The assignment of a note which is secured by mortgage
    carries with it in equity an assignment of the mortgage,
    the security for its payment.

5. SAME—VENDOR'S LIEN—EQUITABLE LIEN—REAL ESTATE.
    An assignment of the liability for the purchase money of
    real estate carried with it, in equity, an assignment of
    the vendor's lien which was security for its payment.

6. LIMITATION OF ACTIONS — VENDOR'S LIEN — ENFORCEMENT —
EQUITY.
    The vendor's lien being in the nature of an equitable mort-
    gage, and ·having priority over assignees in bankruptcy
    or a general assignee for the benefit of creditors, may be
    enforced as against the land, even though the statute of
    limitations has run against the personal liability of the
    vendee.[1]

    OSTRANDER, C. J., dissenting.

Appeal from Kent; McDonald, J.   Submitted April
17, 1918.   (Docket No. 113.)   Decided September 27,
1918.

[1]See note in 39 L. R. A. (N. S.) 1171.

Bill by Margaret Lavin against Jeremiah Lynch, an incompetent, and others to enforce an equitable lien and for an accounting. From an order dismissing the bill, plaintiff appeals. Reversed.

*E. A. Maher*, for plaintiff.

*Joseph Renihan*, for defendants.

It appears by the bill in this case that at the time of his death, December 24, 1881, Patrick Lynch was the owner of certain real estate in Kent county. By his will it was devised to Jeremiah Lynch, subject to the payment of $400 to Mary Wheeler; $1,200 to Johanna Simonds, and $900 to plaintiff. These sums were not to draw interest for three years, but thereafter should draw interest at six per cent. This will was not admitted to probate until December 10, 1915, the interested parties having agreed that it would be unnecessary as they could settle among themselves. On April 20, 1910, the legatees above named executed to Jeremiah Lynch quitclaim deeds of the lands so devised by Patrick Lynch to Jeremiah, he agreeing to pay to them respectively the amount of their several bequests. Jeremiah Lynch has become mentally incompetent, and his daughter, Mary Ellen, has been appointed his guardian. None of such amounts so agreed to be paid by Jeremiah have been paid. Mary Wheeler and Johanna Simonds have assigned their claims and interests to plaintiff who filed this bill July 6, 1916. She seeks by this bill an accounting, a decree determining and enforcing by foreclosure a vendor's lien upon the premises so deeded by quitclaim deeds, and also prays for general relief. Defendant Mary Ellen Lynch, as guardian for her father, moved to dismiss the bill on various grounds, among them the statute of limitations. The trial court dismissed the bill on this ground and plaintiff appeals.

FELLOWS, J. (*after stating the facts*). That the vendor of real estate who takes no security for the payment of the purchase price has an equitable lien for such purchase money upon the lands so sold has long been the established rule. *Carroll* v. *Van Rensselaer*, Har. Ch. 225; *Michigan State Bank* v. *Hastings*, 1 Doug. 225, 258; *Appeal of Palmer*, 1 Doug. 422; *Hiscock* v. *Norton*, 42 Mich. 320; *Dunton* v. *Outhouse*, 64 Mich. 419; *Curtis* v. *Clarke*, 113 Mich. 458; *Kulling* v. *Kulling*, 124 Mich. 56; *Lyon* v. *Clark*, 132 Mich. 521; *Shaw* v. *Tabor*, 146 Mich. 544; 39 Cyc. p. 1787. In the case of *Michigan State Bank* v. *Hastings, supra,* it was said by this court:

"Such liens exist independently of any express agreement, and courts of equity enforce them, on the principle that a person, having gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not pay the consideration money."

And in Cyc., *supra,* it is said:

"A vendor's implied lien, as distinguished from a lien expressly reserved, or from the security which the vendor has while he holds the legal title under an unexecuted contract to convey, is the equitable right, which by implication is accorded to one who has conveyed the title to land without reserving a lien thereupon, and has taken no security for the purchase-money other than the personal obligation of the purchaser, to subject the land in equity to the payment of the purchase-price, when the rights of others are not injured and it is equitable so to do. * * *
"The principle on which a vendor's lien is generally regarded as resting is one of natural justice, that one who gets possession of the estate of another ought not in conscience be allowed to keep it without paying the consideration, although other grounds, such as the presumed intention of the parties, or the existence of a trust between them, have been assigned."

This lien attaches notwithstanding the fact that the

sale did not convey a title in fee, or a legal title, but only an equitable right or interest. *Ortmann* v. *Plummer*, 52 Mich. 76; *Warren* v. *Fenn*, 28 Barb. (N. Y.) 333; *Bledsoe* v. *Games*, 30 Mo. 448; *Loomis* v. *Railroad Co.*, 17 Fed. 301; *Curtis* v. *Buckley*, 14 Kan. 449; *Board* v. *Wilson*, 34 W. Va. 609 (12 S. E. 778).

In the case of *Ortmann* v. *Plummer, supra,* Mr. Justice CAMPBELL said:

"The right of a vendor to a lien does not seem to be confined to the sale of a legal title or title in fee. The leading case of *Mackreth* v. *Symmons*, 15 Ves. 329 (1 Leading Cases in Equity, 194, and notes) was one relating to what was treated as an equitable title. The doctrine has been applied to copy-holds, and appears to be received as to all recognized title. See Adams' Eq. (7th Ed.) p. 128, and notes; *Winter* v. *Lord Anson*, 3 Russ. 488. The lien on an equitable title may no doubt be more uncertain, by reason of the danger that *bona fide* purchasers from the legal holder may intervene and destroy it. But subject to that risk (which is not confined to equitable estates) it may be upheld. In the present case the legal title is still in the railway company, having knowledge of the equities, and defendants are not *bona fide* purchasers. We see no difficulty in the nature of the title."

The case of *Robinson* v. *Woodson*, 33 Ark. 307, is not unlike the instant case upon principle. In that case the vendor executed a deed reserving a lien on the land for the purchase money. Afterwards he executed another deed containing no reservation but acknowledging payment of the purchase price, although it had not in fact been paid. It was held that he had a vendor's lien which was enforceable in a court of equity.

When this plaintiff and her assignors, on the 20th day of April, 1910, executed to Jeremiah Lynch their respective quitclaim deeds of the premises, thereby conveying to him their respective interests therein un-

der the will of Patrick Lynch, deceased, taking his unsecured promise to pay the purchase price therefor, they each held, by virtue of such transaction, a vendor's lien for the payment of such purchase price. Was such lien assignable? While the courts are not in harmony on this question we think it must be answered in the affirmative. *Curtis* v. *Clarke, supra; Dryden* v. *Frost,* 8 L. J. Ch. (N. S.) 235; *Buford* v. *McCormick,* 57 Ala. 428; *Felton* v. *Smith,* 84 Ind. 485; *State Bank of Iowa Falls* v. *Brown,* 142 Iowa, 190 (119 N. W. 81); *Dickason* v. *Fisher,* 137 Mo. 342 (37 S. W. 1114); *Armstrong* v. *Farr,* 11 Ont. App. 186; *Board* v. *Wilson, supra.* The transfer of a note which is secured by mortgage carries with it in equity an assignment of the mortgage, the security for its payment. *John Schweyer & Co.* v. *Mellon,* 196 Mich. 590. So here we think an assignment of the liability for the purchase money carried with it, in equity, an assignment of the vendor's lien which was security for its payment.

Such vendor's lien is in the nature of an equitable mortgage (*Clark* v. *Stilson,* 36 Mich. 482; *Balow* v. *Insurance Co.,* 77 Mich. 540), and has priority over assignees in bankruptcy, or a general assignee for the benefit of creditors (*Lyon* v. *Clark, supra*). This being its character, it may be enforced as against the land even though the statute of limitations had run against the personal liability of the vendee. *Stringer* v. *Gamble,* 155 Mich. 295 (30 L. R. A. [N. S.] 815).

The very nature of the right precludes its enforcement at law. An equitable proceeding is necessary to establish and enforce it. The authorities already cited and the nature of the right demonstrate this. We have considered all the grounds set up in defendant's motion to dismiss. None of them are tenable. The bill sets forth a cause of action for equitable relief.

The decree of the court below must be reversed and

the demurrer overruled. Defendant will have the usual time to answer. Plaintiff will recover costs of this court.

BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred with FELLOWS, J.

OSTRANDER, C. J. (*dissenting*). The bill was filed July 6, 1916. It is charged therein:

"II. That at the time of his death the said Patrick Lynch was the owner in fee simple of certain lands and premises situate and being in said county of Kent, known and described as follows, to wit: the southeast quarter of the northwest quarter and the west half of the northeast quarter of section 31 in township 7 north, range 12 west, and of lot 24, in block 2 of Gunnison's subdivision in the city of Grand Rapids, in said county.

"III. That the said Patrick Lynch, previous to the time of his death had executed an instrument which he intended as his last will and testament, which provided that all of his estate should go to his son, Jeremiah Lynch, the defendant in this case, subject to certain specific legacies and other directions. That among the specific legacies was one to Mary Wheeler for the sum of four hundred dollars, to Johanna Simonds for the sum of twelve hundred dollars, and to this plaintiff (then Margaret Lynch) for the sum of nine hundred dollars. That said amounts should be without interest for three years after the death of said Patrick Lynch and should draw interest at the rate of six per cent. per annum after that period of time.

"IV. That it was arranged and agreed by and between the heirs at law and next of kin of said Patrick Lynch, deceased, that it was unnecessary to have said will presented for probate; that they would arrange for a settlement of the estate of said Patrick Lynch, deceased, without probating said will, and it was further agreed by the said Jeremiah Lynch, that he would pay to the above named Mary Wheeler, Johanna Simonds and the said plaintiff herein, the several amounts which the said instrument provided that they should receive from the said estate for their interests

in the lands and premises appertaining to said estate.

"V. That on the month of April, 1910, the said Jeremiah Lynch requested said Mary Wheeler, Johanna Simonds and this plaintiff to execute conveyance to him of said lands and premises, and agreed that if such conveyance were made he would pay to them respectively the several amounts of the legacies to them respectively provided for in the said will of Patrick Lynch, deceased. That on or about the 20th day of April, 1910, the said Mary Wheeler in pursuance of said request executed such a deed of conveyance to said Jeremiah Lynch, and on or about the 20th day of April, 1910, this plaintiff and Johanna Simonds in pursuance of said request also executed a deed of conveyance of said premises to said Jeremiah Lynch, and said deeds were recorded in the office of the register of deeds of said county of Kent on the 11th day of July, 1910, in liber 386 of deeds on pages 442 and 443 respectively.

"VI. That each of said deeds expressed a consideration of one dollar and other good and valuable consideration, and that the other and good valuable consideration mentioned in said deeds were the promises of said Jeremiah Lynch to pay to this plaintiff and to said Mary Wheeler and Johanna Simonds the amounts provided for in the will of said Patrick Lynch, deceased, as aforesaid.

"VII. That the said Jeremiah Lynch has never paid to this plaintiff or to said Johanna Simonds or Mary Wheeler respectively the said sums of money or interest thereon or any part thereof, which it was provided in the will of said Patrick Lynch, deceased, that they should be paid by said Jeremiah Lynch.

"VIII. That the said Mary Wheeler and Johanna Simonds have each assigned, transferred and set over to this plaintiff all of their claims and demands against the said Jeremiah Lynch, and the above described premises and all of their claims and demands against the estate of Patrick Lynch, deceased, for and on account of the provisions so made for them in the will of said Patrick Lynch, deceased, and the said plaintiff is now possessed of the right to demand, receive and maintain suits for the purpose of recovering the sums and amounts which were made due and pay-

able to this plaintiff by the terms of the said will of Patrick Lynch, deceased, and of the said promises and agreements of said Jeremiah Lynch together with all liens that the said Mary Wheeler and Johanna Simonds, as well as this plaintiff, had upon the aforesaid lands and premises."

It is further charged that Jeremiah Lynch has become and is mentally incompetent and that Mary Ellen Lynch is guardian of his estate, having been appointed March 8, 1916, that the will of Patrick Lynch was allowed December 10, 1915, and that Mary Ellen Lynch has. been appointed to administer his estate. Upon information and belief it is charged that Mary Ellen Lynch has contracted with the other defendants to sell to them the said premises and that the vendees are in possession of them. Relief prayed for is an *account* of the amounts which the plaintiff and the said Johanna and Mary "became and were entitled to receive from said Jeremiah Lynch under the will of said Patrick Lynch," and that it be decreed that plaintiff has a lien upon the land—

"for the amounts which became due and owing to this plaintiff and to said Mary Wheeler and said Johanna Simonds respectively under and in pursuance of the terms of the will of said Patrick Lynch, deceased, and the agreement so made by Jeremiah Lynch to pay the same as aforesaid."

In default of payment, a sale of the land is asked for "to satisfy such lien." There is a prayer for general relief. On motion to dismiss, it was held that the cause of action is barred by the statute of limitations.

The will of Patrick Lynch is not set out in or with the bill, nor is the value of his estate or of what it consisted. Upon a motion to dismiss, we must deal with the facts set out in the bill. The bill charges that the testator bequeathed and devised all of his estate to his son Jeremiah, subject to *certain specific*

*legacies.* This imports that there was personal property. It does not import that the legacies were made a charge upon the real estate. Quite the contrary. It was agreed that the will should not be probated, and Jeremiah promised plaintiff and her assignors, the legatees, to pay them the amounts of their legacies. Apparently, this promise was made 33 years before the bill was filed. Jeremiah did not pay as he agreed he would, but when, in April, 1910, the will not yet having been probated, he wanted to secure apparent title to the real estate in himself, to make a sale of it, and for this purpose desired conveyances from the other heirs at law of his father, he renewed his promise to pay them their specific legacies. The plaintiff and her assignors conveyed their then apparent, but not real, title to the land. The will has since been admitted to probate. Nothing further than this can be gathered from the bill of complaint.

Assuming all charges made in the bill to be true, what present enforceable right of plaintiff is disclosed? Obviously, it is a right resting upon either (1) the will and the specific legacies therein given to them, or (2) upon the promises of Jeremiah. If upon the will, this is not the forum for asserting it, the estate being open and the probate court engaged in its administration. If upon the promises of Jeremiah, neither of them was made within six years before this suit was begun and neither is actionable in a court of equity. Plaintiff and her assignors do not claim that they ever had title, legal or equitable, to the land or ever sold it. Clearly, they never, in fact, had legal or equitable title to it. They never sold it, and it is not asserted that any portion of the purchase price, upon a sale, remains unpaid. They conveyed the land, in form, upon the repeated promise of Jeremiah to pay them, not the purchase price, but the amount of the legacies fixed in the will.

If we indulge the notion that upon the death of the ancestor plaintiff and her assignors had an equitable lien upon the estate, including the real estate, to secure payment of their legacies, the promises or denials of Jeremiah could not affect it, enlarge or diminish it, unless in relying upon them plaintiff and her assignors released the lien. If they did not release it, what has kept it alive for 34 years?

The decree should be affirmed, with costs to appellees.