MARTIN BANK v. WOODS et al.—142 S. W. (2d) 750.

Western Section. June 15, 1937.

Petition for Certiorari Denied by Supreme Court, February 12, 1938.

J. L. Fry, of Union City, for appellants.

Maiden & Maiden, of Dresden, and J. W. Rankin and D. W. Harper, both of Martin, for appellee.

ANDERSON, J. The Martin Bank appealed from so much of the decree of the Chancellor as refused and declined to fix and enforce an equitable lien on the interest of defendant, Mrs. Hazel Lee Woods, in a thirty-eight acre tract of land described in the bill. J. W. Rankin, administrator ad litem of the estate of Mrs. Bertha Rudd Brooks, deceased, also appealed from so much of the decree of the Chancellor as refused to fix and enforce an equitable lien on said tract of land in favor of the estate of his intestate.

The other portions of the relief sought by the original bill and by the cross-bill filed by the said Mrs. Bertha Rudd Brooks, deceased, in her lifetime, are immaterial to the questions presented upon the appeal.

The nature of the litigation and the facts giving rise to the questions presented may be best made to appear from the elaborate finding of facts filed by the Chancellor. Since the appellee, Mrs. Hazel Lee Woods, insists in the brief filed on her behalf that "the Chancellor's finding of facts was correct and that this case ought to be affirmed" we quote said findings in full:

"The bill in this cause was filed, seeking a judgment on a promissory note and seeking to have the Court declare an equitable lien on the 38 acre tract of land, described in the bill, to secure said note and have said lands sold for the satisfaction of said lien.

"Mr. T. E. Rudd, a citizen of Weakley County, Tennessee, died intestate some years ago, leaving surviving him as his widow, Mrs. Bertha Rudd, who afterwards inter-married with one Brooks, and whose name is now Mrs. Bertha Brooks, and as his only children and heirs at law Homer W. Rudd, Dewey Rudd, Raymond Rudd, together with two daughters, Clara Rudd and Louise Rudd Terrell. His widow and the foregoing named children were his only heirs at law. After his father's death, Dewey Rudd inter-married with one Hazel Lee Freeman. Dewey Rudd died in May, 1930, survived

by his wife, they having no children. His widow, prior to the filing of the bill, inter-married with the defendant, Adrian Woods.

"The Martin Bank, as complainant, brings this suit against Mrs. Bertha Brooks, Homer W. Rudd and his wife, Clara Rudd and Hazel Lee Woods and her husband, Adrian Woods.

"After the death of T. E. Rudd, his widow continued to live on his farm. This farm consisted of 165 acres and was supplemented by 38 acres purchased by the widow, after her husband's death. Mrs. Brooks lived on said farm for several years. Her sons married and left home, Homer moving to Chicago, Raymond to another farm, while Dewey went to work in complainant's bank in Martin. During the several years, about eighteen, that Mrs. Brooks lived on said real estate, Dewey and Raymond attended to her financial affairs, did her bookkeeping and rendered what assistance they could to her, and during this period of time, a number of debts were created by Mrs. Brooks. Among these debts were several notes executed by her to Dewey. It might be well to say here that none of these debts are questioned, all of them being bona fide obligations of the widow, and the amounts owing having been expended for her use and benefit and livelihood. These obligations became so burdensome that about January 1st, 1930, it was decided for the three boys to pay off the indebtedness of their mother and divide up the estate.

"Among the notes owing to Dewey by his mother was one, dated June 22, 1929, for the sum of $510.00. This note was indorsed over to complainant bank on January 23, 1930, the day it was due as collateral to a note, executed by Dewey to said bank in the sum of $540.00 it being the one sued on in this cause.

"As stated, the widow and heirs at law of T. E. Rudd about January 1st, 1930, began discussing a division of their father's estate and the payment of the debts of their mother, Mrs. Brooks. It was ascertained that the total debts of Mrs. Brooks was $3,144.07; the total value of 153 acres of the lands, including the 38 acres purchased by Mrs. Brooks after her husband's death was $6,100.00. It was also agreed that knocking off the $44.07, subtracted from the $6,100.00 real estate value, would leave a net balance of $3000.00 in real estate value to be divided between the five children. This left fifty acres for the use and benefit, as homestead and dower, of Mrs. Brooks out of the total acreage.

"In pursuance of this agreement, Raymond Rudd agreed to take forty acres, at $40.00 an acre, or $1600.00 worth; crediting this sum with his $600.00 inheritance, left a balance of $1,000.00 due by him, which he paid by assuming and settling a note due the Farmer Bank at Sharon.

"Forty acres of land was taken by Clara and Louise, valued at $30.00 an acre or $1,200.00. They were compelled to make no payments, because this was their interest in their father's estate.

"Thirty-five acres was to be taken by D. L. Rudd at $40.00 an acre or $1400.00, and D. L. Rudd and Homer Rudd agreed to purchase thirty-eight acres at $50.00 an acre or $1900.00. The total of D. L. Rudd's and Homer Rudd's real estate amounted to $3300.00, which less their $1200.00 credit, left a net due by them of $2100.00. Of this sum, Homer was to pay $350.00 and Dewey was to pay $1750.00, Homer's only interest being in the thirty-eight acres at $50.00 an acre, or $950.00, which, with a credit of his $600.00, left only $350.00 due by him. This was paid. The deeds were made to said sons and their wives by the entirety.

"This left Dewey Rudd owing in the settlement the sum of $2350.00, which less his $600.00 interest in the estate, left him to pay in $1750.00.

"This agreement between these parties to settle the estate on these terms and conditions was effected, deeds were made and signed dated January 1, 1930, and Dewey became the owner of thirty-five acres and a half interest in thirty-eight acres of land. While it does not affirmatively appear yet the proof indicates that delivery of deeds to Dewey et al. was not made until Feb. 3, 1930.

"As stated, the amount he was to pay was $1750.00 and as was above stated, among Mrs. Brooks debts were the notes, which she had executed to Dewey. These notes, with interest thereon, total something more than $1300.00, but Dewey agreed to settle with her for $1150.00, and to accept that sum in full payment of his notes.

"Raymond Rudd paid the amount due by him in this settlement; Homer paid the amount due by him in the settlement; and the payments were made to their mother, Mrs. Brooks. D. L. Rudd also paid her the $1750.00 due by him. His payment was made by check, dated at Martin, Tennessee, January 2nd, 1930, payable to the order of Mrs. Bertha Rudd's estate and shows it was 'for difference in valuation in full settlement Mrs. Bertha Rudd estate.' This check was duly paid by the bank on February 3rd, 1930, and on the same date was deposited to the credit of Mrs. Bertha Rudd's estate in said complainant bank. The same time this check was given, Mrs. Bertha Rudd Brooks gave Dewey her check for $1150.00 in payment of her notes due to him. This check was charged against her account in said bank on February 3, 1930, and on the same date was deposited to Dewey's credit in said bank. The bank records establish this fact and the deposit ticket in Dewey's favor for said sum is filed in the record. It then appears that the entire transaction as far as Dewey was concerned was completed on Feb. 3, 1930.

"After said payments and after said settlement, Dewey Rudd died on the 30th day of May, 1930, when it was discovered that one of mother's notes to him had not been canceled by him, as paid, but was outstanding in the hands of complainant bank as collateral

to a note for $540.00, executed to complainant bank on January 23rd, 1930, payable one year after date. It might be here remarked that the Mrs. Brooks note was for the sum of $510.00 and due on January 23, 1930, after the date of said deed but before the closing out of said trade on Feb. 3, 1930.

"Later, after Dewey's death his widow sold and conveyed the thirty-five acre tract of land, received in said settlement from their mother, to a Mr. French, leaving Homer Rudd and wife as tenants by entirety and Mrs. Hazel Lee Woods the owner and tenants in common of the thirty-eight acre tract of land involved here.

"It is insisted by the complainant bank that the conveyance from Mrs. Rudd and the other children to Raymond and his wife and Dewey and his wife was made in consideration of the cancellation and delivery up of these various indebtednesses, and that the consideration on Dewey's part has not been paid, in that he did not cancel and deliver his mother's $510.00 note referred to above, and that, therefore, Mrs. Rudd has an equitable lien on Dewey's one-half interest in said thirty-eight acre tract of land for the payment of said note of $510.00.

"This is the question in this lawsuit.

"The Court finds that it was not within the contemplation of the parties that such a lien obtain altho such intention would be necessary in the state of this record that the cancellation and delivery up of said note was not the consideration for said conveyance, but that Dewey agreed to pay said difference in value of said lands and did pay it, as evidenced by his check, and that Mrs. Rudd was then to pay these notes of Dewey, which she did pay; and while it is true that she failed to receive the $510.00 note, which she had executed to Dewey on June 22, 1929, yet that the tract of land here involved is not subject to an implied or equitable lien for the satisfaction of that note.

"The Court finds that the amount due on said note was included as a part of the total amount due by Mrs. Brooks to her son, Dewey.

" 'An implied lien can not exist where, from the nature of the contract between the parties, it would be inconsistent with the express terms or the clear intent of the contract.' 17 R. C. L., page 607.

"It was the nature and intent of the contract, or agreement, between Mrs. Rudd and her sons that they pay into her hands the respective amounts due by them and each of them on the tracts of land conveyed to them and this they each did, including Dewey.

" 'The vendor's implied lien arises out of the contract to pay the purchase money, and so it is essential that there be a sale of realty which is actual and bona fide, and a debt for the purchase money due the vendor, or his assigns, payable as purchase money. . . .' 66 C. J., page 1220.

"In the case at bar there was a sale of realty, actual and bona fide; there was no debt for the purchase money because the purchase money was paid by D. L. Rudd's Check, showing for what it was given.

" 'No lien arises for indebtedness arising from other transaction, nor for the amount of a note given for other considerations than the purchase price of realty sold to the purchaser.' 66 C. J., page 1221.

"The note here sought to be set up as constituting an implied lien against this realty was not even executed by the purchaser. It was given for other consideration (borrowed money) than the purchase price of realty sold to the purchaser. It was given by the seller, and executed nearly six months prior to the day of sale, and at the time the sale was completed the note was outstanding in the hands of a party other than either party to the contract of sale and purchase, the purchaser did not even assume to pay the seller's note to him, but she was to pay that note and did pay it to her son but failed to obtain it, it being at the time outstanding in the hands of an innocent purchaser. For this she alone is responsible. When she gave Dewey her check in payment of her indebtedness to him she should have had him deliver up all of the notes he held against her.

"It might be noted here that the question in the lawsuit is fully presented by proper pleadings on the part of all the parties. It is further found by the Court that the defendant Mrs. Woods had neither actual nor implied notice of the details of the trade and purchase of land by her husband Dewey from his mother, nor did she know of the note involved in this proceeding due by Mrs. Brooks to her son Dewey.

"The estate of Dewey Rudd has not been fully administered, and the complainant the Martin Bank is entitled to proper judgment on the note it holds, that is the note of Mrs. Rudd against Dewey Rudd and their note against Dewey Rudd, together with a judgment for the costs of this proceedings but the case will be dismissed insofar as Mrs. Woods is concerned. Decree will be prepared accordingly.

"The Clerk and Master will file this finding of fact as a part of the record in this cause.

"W. W. Herron,<br>"Chancellor."

Mrs. Bertha Rudd Brooks, original defendant and cross-complainant, died after the cause was submitted, and upon the admission of her death intestate and that she left no personal estate outside of the claim involved in this cause and that it was not likely that there was anyone that could be procured to administer upon her estate, J. W. Rankin, Esq., was appointed administrator ad litem of the estate of said deceased.

A decree was entered in accordance with the foregoing finding and by way of further elucidation of the questions presented upon the appeal the following is quoted from the decree:

"It further appears that the late D. L. or Dewey Rudd, on January the 23rd, 1930, became indebted to the complainant bank in the sum of $540.00, evidenced by note of said date and payable at one year to the complainant The Martin Bank; that said note shows on its face that it is secured by collateral note of Mrs. B'ertha Rudd, now Brooks, in the sum of $510.00; and said note also provides for the payment of reasonable attorney's fees, if placed in the hands of an attorney for collection, or the services of an attorney becomes necessary. And it further appears that said note is now, and ever since its delivery has been, the property of the complainant bank and that the same is long past due and wholly unpaid, and that there is now due on said note, principal and interest, the sum of $766.80, and the further sum of $76.69, as attorney's fees, which the court fixes as reasonable, making a total sum of $843.48, principal, interest and attorney's fees, which amount is fixed and decreed in favor of the complainant bank and against the estate of the said D. L. or Dewey Rudd, now represented by the administrator-ad-litem in this cause.

"It further appears to the court that on June the 22nd, 1929, the original defendant and cross-complainant, Mrs. Bertha Rudd Brooks, became indebted to the said D. L. or Dewey Rudd in the sum of $510.00, evidenced by her note of June the 22nd, 1929, and payable to the said D. L. or Dewey Rudd on January the 23rd, 1930. This note provides on its face for the payment of a 10% attorney's fee, if placed in the hands of an attorney for collection or suit, and it further appears that the said $510.00 note was by the said payee therein, D. L. or Dewey Rudd, hypothecated as collateral to the complainant The Martin Bank on January the 23rd, 1930, to secure a note of his to the said The Martin Bank for $540.00, merged into a decree in the preceding paragraph hereof, and that said $510.00 note, from the date of its hypothecation, and now, is held by the said complainant, The Martin Bank, as security for said $540.00, obligation of the said D. L. or Dewey Rudd, and that said note is wholly unpaid and that there is due and owing on said $510.00 note, principal, and interest, the sum of $724.20, together with the further sum of $72.42 as attorney's fee, or an aggregate of $796.62, which total amount is here fixed and decreed in favor of the complainant, The Martin Bank, against the estate of the deceased, Mrs. Bertha Rudd Brooks, now represented by the administrator-ad-litem in this cause, all of which is decreed.

"It is further ordered and decreed that the recovery hereinabove in favor of the Martin Bank against the estate of the said D. L. or Dewey Rudd on the $510.00 note, for the amount of $796.62 shall

likewise be a recovery to that extent in favor of the estate of the said Mrs. Bertha Rudd Brooks, for her use and benefit and likewise for the use and benefit of the complainant, The Martin Bank, all of which is decreed.''

A considerable portion of the reply brief of the appellee, Mrs. Hazel Lee Woods, the only party contesting the claims of the appellants, is devoted to a discussion of the evidence and the facts, but since she expressly concedes in her brief that the Chancellor's finding of facts is correct, the question presented will be determined upon the facts so found.

Although she may not have participated in the transaction whereby the conveyance of the thirty-eight acre tract was made, the appellee, Mrs. Woods, as the surviving tenant by the entirety, stands upon no higher ground than her deceased husband stood insofar as the asserted right to the lien on the tract so conveyed is concerned. In other words, if the right to the lien existed on the land as against the husband during his lifetime it likewise exists against her as the surviving tenant by the entirety; for in taking the title in their joint names and agreeing upon the consideration, he is to be treated as having acted on her behalf as well as on his own. In short she is regarded as having been a party to the consideration. Moore v. Cary, 138 Tenn., 332, 343, 197 S. W., 1093, L. R. A., 1918D, 963.

If the right to the lien existed in the vendor, Mrs. Bertha Rudd Brooks, it was not extinguished by her death but passed to her personal representatives. 27 R. C. L., page 593, sec. 341.

The first question to be determined, therefore, is whether the circumstances of the transaction, as found by the Chancellor, distinguished from his conclusions, were such as in equity gave rise to a lien in favor of the vendor, Mrs. Bertha Rudd Brooks.

It is first to be noted that the Chancellor found that the note for $510 executed by the vendor to her son, Dewey Rudd, which he had pledged to the bank as collateral (hereinafter referred to for convenience as the $510 note), was one of those evidencing the debt which Dewey agreed to cancel and satify, but he further found that the cancellation and delivery of the $510 note ''was not the consideration for said conveyance but Dewey agreed to pay said difference in the value of said lands and did pay it, as evidenced by his check and Mrs. Rudd was then to pay these notes of Dewey which she did pay.''

We are unable to assent to this view. The Chancellor manifestly treated the several transactions as separate and distinct, whereas we think they must be regarded as a series of events constituting a whole. The situation clearly calls for the application of the familiar principle that ''equity heeds not form but the substance of things.'' Chambliss' Gibson, Section 43.

Of course, as between Mrs. Bertha Rudd Brooks and Dewey Rudd the latter could not be heard to say that the $510 note was not paid for he received from his mother the amount which he agreed to accept in satisfaction thereof; but as between Mrs. Brooks and the appellant bank it is conceded that she is still liable on the note.

The deed recites that it was made ''for and in consideration of the sum of $1900.00 to be paid herein.'' This consideration was to be paid to the extent of $510 by the satisfaction by the vendee Dewey Rudd of that amount which he knew was then outstanding and unpaid in the hands of the appellant bank at the time the conveyance was delivered. He received the money from the vendor Mrs. Brooks with which to pay this note, and agreed to do so but did not. Instead he manifestly converted to his own use the money thus received and left the liability of the vendor on the note outstanding and unsatisfied. This liability has been merged into a judgment rendered against her in this cause and so far as appears she will be compelled to satisfy it.

The net result of this transaction was that when the appellant, Mrs. Brooks, pays the judgment on the $510 note she will have been deprived of $510 of her money for which she had received nothing and the appellee, Mrs. Woods, will have received, in value, $510 for which neither she nor her husband paid anything. If the sole consideration for the conveyance had been the agreement on the part of Dewey Rudd to cancel and discharge the one note, the appellee, Mrs. Woods, would have gotten Mrs. Brooks' land for nothing. The fact that the agreement that the note should be satisfied was only a part of the consideration cannot alter the principle or prevent its application. Such a result as that indicated will not be tolerated by a court of equity, whatever may be the form or method resorted to to accomplish it.

It should have been stated that Mrs. Rudd's check for $1150 payable to Dewey was turned over to him and he retained the $1750 check which he had drawn, payable to his mother. Both checks were deposited on February 3, 1930, the former to the credit of Dewey Rudd and charged to his mother's account and the latter to the credit of his mother and charged to Dewey's account. The net result of this transaction was that, since Dewey Rudd did not satisfy the $510 note with the proceeds of the $1150 check which had been given him for that purpose but presumably used it for his own purposes, he lacked $510 of having paid the amount which he agreed to pay as a consideration for the conveyance. We think there is no escape from this conclusion. To conclude otherwise would be to exalt the form above the substance, a thing peculiarly abhorrent to a court of equity. It would be to say that Dewey Rudd could have, at the expense of his mother, profited by his own wrong in violating the agreement to satisfy the note, which would be even

more abhorrent to a tribunal that boasts that it is a "court of conscience."

The simultaneous exchange and deposit of the checks clearly resulted in a net credit to Mrs. Brooks of only $600. Since she did not receive the full value of the $1,750 check as it was intended she should, the taking of that check was not a waiver of the lien. Cf. Denny v. Steakly, 2 Heisk., 156.

The case of Lavin v. Lynch, 203 Mich., 143, 168 N. W., 1024, 1025, 2 A. L. R., 804, affords an interesting application of the principle and the foundation upon which it rests. Quoting from a previous case, Michigan State Bank v. Hastings, 1 Doug., Mich., 225, 41 Am. Dec., 549, with reference to a vendor's equitable lien it was there said: "Such liens exist independently of any express agreement, and courts of equity enforce them, on the principle that a person having gotten the estate of another ought not in conscience, as between them, be allowed to keep it and not pay the consideration money.

As already indicated, we think the agreement to pay this note was clearly a part of the consideration for the conveyance. At the time the deed was delivered the bank was the holder of the note and this fact was known to Dewey Rudd. Hence at the time the transaction was concluded the true situation was just as if, as a part of the consideration for the conveyance, the vendee agreed to pay the note of the vendor then held by a third party. The fact that the vendor was unaware that the note was in the hands of the third party and the latter was unaware of the agreement by the vendee to pay it as a part of the consideration for the deed can make no difference in the principle applicable as between the vendor and the vendee.

The case of Thompson v. Thompson, 71 Tenn. (3 Lea), 126, 127, is in point upon the controlling principle.

In that case, Thomas Thompson conveyed to three of his children a tract of land in consideration of certain money payments to be made to third persons, among others, one of $200 to the complainant Joseph M. Thompson, and one of $150 to Steven A. Thompson, the father of the other complainants. The deed was absolute, not reserving any lien for the payment of the purchase money.

It was held that the acceptance of the deed by the defendant grantees made them liable to the third persons for the respective amounts mentioned as for their own debts, and this without any promise in writing signed by them and that such third persons had a vendors' lien on the land for the security of the payment although the sale was absolute without reservation of a lien by contract. See Moore v. Stovall, 2 Lea, 543, and Hamilton v. Gilbert, 2 Heisk., 680.

The principle that controls a disposition of the question confronting us is also fully explained and applied in the case of Zwingle v. Wilkinson, 94 Tenn., 246, 28 S. W., 1096.

Other cases declaring and enforcing the lien in favor of third persons not parties to the transaction are collected in the notes appearing in 47 L. R. A. (N. S.), 187, and Ann. Cas. 1914C, 493 and 499.

The obligation of Dewey Rudd in this case was to pay and satisfy the $510 note in whomsoever's hands it might be and the only difference between this case and the Zwindle case is that in that one the obligation of the vendee was evidenced by a note, whereas in this one it was evidenced by an oral agreement—a difference, as was said by the Court in the Zwindle case, which we regard as wholly unimportant.

The case of Jenkins v. Dawn, 158 Tenn., 1, 11 S. W. (2d), 865, 866, is likewise directly in point in principle. It there appeared that Dawn purchased certain land from the complainant, James Lenox, and in payment of part of the purchase price executed to Lennox notes, which the latter thereafter delivered and assigned by blank indorsement to the complainant Jenkins, who was the holder of the notes at the time the bill was filed. The complainants, C. E. Arp and S. Arp, had become indorsers on said notes at some time before the suit was brought. The bill filed by the vendor-assignor Lennox, Jenkins, the holder of the notes, and the indorsers thereon, sought a judgment against Dawn, the vendee-maker, and the enforcement of a lien against the land for the balance of the purchase money. The bill averred, among other things, that the various indorsers were liable upon the notes. The answer of Dawn admitted personal liability on his part as maker of the notes but denied the right of the complainants to enforce the lien upon the land, although expressly admitting that the defendant Dawn had purchased the land from the complainant Lenox and had not paid for it. It was insisted by the defendant Dawn that the vendor's lien did not pass by the assignment of the note, it being non-negotiable; that an equitable, implied lien is personal only to the original vendor, and not subject to transfer or assignment. After referring to the fact that Tennessee has adopted the rule denying the equitable lien to the assignee of a purchase money note, the Court said:

"While the indorsement of the original vendor, payee of the notes, is in blank, and therefore contains no express words of liability, he joins in the original bill and is a party to the allegation that he is liable to the holder, thus conceding a contractual obligation to this effect, which would otherwise have been subject to proof; and, further, in this cause, as has been seen, a decree adjudging liability against this original vendor was entered."

After holding that the vendor had thus been brought strictly within the rule to the effect that, if the vendor be liable upon his indorsement, he may enforce the lien for his protection, the Court continued:

"It would hardly be questioned that, if a suit had been first brought by the holder against his assignor, the original vendor, charging him with liability by virtue of a special contract, a judgment had been rendered against the vendor and he had thereafter brought suit to enforce his implied vendor's lien against the purchaser of the land, his right to enforce the lien would have been clear. We think circumlocution was unnecessary. The practice in courts of equity is flexible and designed to avoid multiplicity of suits, and under the circumstances here appearing the complainants are entitled to a decree, primarily for the benefit of the original vendor Lenox, enforcing a lien in his favor upon the land fully described in the deed exhibited with the bill, and referred to in the notes sued on."

So, in Moore v. Cary, 138 Tenn., 332, 197 S. W., 1093, 1095, L. R. A., 1918D, 963, after observing that "An indebtedness may proceed through many mutations yet preserve its identity," the Court said, referring to the effect of the assignment of a vendor of a purchase money note:

"If notwithstanding the assignment the vendor's liability for the debt persists by means of indorsement, guarantee, suretyship, or in any other form, and he subsequently reacquires the debt, his lien revives and may be enforced."

It will thus be observed that the basis for the lien is that the vendor becomes or continues liable for a debt which the vendee, as a part of the consideration for the conveyance of the land to him, agreed to pay, but with respect to which he made default, thus throwing the burden which he agreed to assume upon the vendor.

That is exactly the situation disclosed by the record in this case. Here the vendor, Mrs. Rudd, continued liable on the note in the hands of the bank as the pledgee thereof notwithstanding the agreement of the vendee, Dewey Rudd, to pay it, or that as to him it should be considered as satisfied and canceled; for it is not contended that the payment to Dewey Rudd was good as against the bank. Mrs. Rudd, then Mrs. Brooks, joined in this bill, conceding her liability on the note and a decree so adjudging was entered.

If, upon learning of the failure of Dewey Rudd to pay the note with the money which she gave him, she had paid it to the bank and then brought suit to enforce her implied vendor's lien against Dewey Rudd, we can conceive of no principle of equity which would have denied her the right.

As stated in Jenkins v. Dawn, supra, such circumlocution was unnecessary. The lien may be enforced primarily for the benefit of

Mrs. Brooks estate by the bank as the holder of the note upon which she has been decreed to be liable. The appellants are entitled to a decree to this effect and declaring a lien on the interest of the appellee, Mrs. Woods, in the land primarily for the benefit of the estate of Mrs. Brooks. The cause will be remanded to the end that the lien may be enforced by an appropriate proceeding and for such further proceedings as are no inconsistent with the views herein expressed. The costs of the appeal will be paid by the appellee, Mrs. Woods, and the costs of the Chancery Court as decreed there.

Senter and Ketchum, JJ., concur.