Mr. Justice Cos
delivered the opinion of the court.
This is an action by John Campbell, calling himself administrator of Springer, appointed as such by the Supreme Court of the District of Columbia, against Nathaniel Wil *498 son. The substance of the declaration is that the defendant, as attorney,and counsellor of the plaintiff, on the 26th of October, 1876, collected from the United States the sum of $9,225, being a claim held by his intestate against the Government, and -that the defendant, as to $2,000 of that amount, retained the money for his own use and refused to-pay it over. The declaration also contains the common counts. The defendant pleads the general issue and the statute of limitations. Further notice of the pleadings will be taken presently. At the trial several exceptions were taken by the plaintiff, only one of which it is necessary to notice. That states that while the defendant was under cross-examination the court arrested the trial of the case and decided that, as matter of law, upon the facts then proved, the plaintiff was not entitled to recover, and instructed the jury to return a verdict for the defendant. It may be well to say a word as to the proof upon the merits. The defendant testified that the plaintiff gave an order on him to pay S. P. Brown $2,000 out of the proceeds of this claim when collected, and Brown gave a further order in favor of Stanton & Worthi ngton for $1,000 to be paid out of his $2,000 ; that the defendant accepted the orders and paid them when the money was received. The plaintiff’s attorney, on the other hand, testified that he simply gave an authority to the defendant Wilson to pay the $2,000 to Brown, but that Brown having failed to render any service for it, he revoked the order and claimed the payment of the amount from-Wilson which was refused. If the case has to be decided upon its merits, it will depend upon the question which of these two contradictory statements is correct, and the court was -wrong in taking that question from the jury. Let us consider then how the case is affected by the defence of limitations. And here I again refer to the pleadings. To the plea of limitations the plaintiff' replies that the sum of money in controversy came into the defendant’s possession as the attorney of the plaintiff, and that the defendant holds such sum of money as trustee for the plaintiff', and is not protected in holding it by reason of the statute of limitations. The defendant rejoins to this- *499 that, on the 26th of October, 1876, the plaintiff knew he had the money and demanded payment of it, and defendant refused to pay it then and ever since. On this the plaintiff takes issue ; so that the only question of fact in this connection presented on the pleadings, is whether the demand was made on Wilson on the 26th or 27th of October and payment was then refused. The plaintiff’s witness, Charles Campbell, who was his attorney in fact, testifies that on or about the 26th of October, 1876, he notified the defendant not to pay $2,000 to Brown, and demanded payment of it to himself, as agent of the plaintiff, and that the defendant, then and continuously since, refused to accede to the demand. The defendant testifies to the same effect; so that on the only issue of fact made in connection with the statute of limitations, the evidence is all one way, and that on both sides is in favor of the defendant. What then is the law on this subject? It is true that if one holds a fund professedly and admittedly as trustee, no lapse of time precludes the beneficiary from claiming that fund, because no cause of action arises, and therefore he is not in default for not suing, until some breach of duty or adverse claim by the trustee ; but from the moment when that adverse position is taken by the trustee the statute commences to run. It may be doubted whether the law of trusts applies to the case of money collected by an attorney for his client, because that money is not intended to be held in trust, but to be paid over promptly ; so that from' the moment the attorney fails to turn it over a cause of action arises. In this case it is clearly proved that the defendant refused to pay over this money claimed of him, in October, 1876, so that the plaintiff had a cause of action against him immediately, and the statute commenced to run against him from that time. Both the law and undisputed facts, therefore, w'ere with the defendant, and the court committed no error in taking the ease from the jury ; the facts clearly showing a perfect defence to the action.
A peculiarity of the case is that the pleadings present one issue and the argument an entirely different one; and it *500 may be well to notice the positions taken in the argument.
It was maintained for the plaintiff that, although he was administrator in 1876, when the cause of action accrued, yet he could not sue in this District by virtue of his Florida let-, ters of administration, nor until he took out letters here in February, 1880, and that the statute began to run against him only from the latter date, and the action was brought in ample time after that, viz., in July'-, 1881.
Now, the law is very well settled that when an administrator founds a claim upon a contract made by himself with a party, although it relates to the estate he represents, he may sue upon the contract in his own name. The English books hold, that if the money, when received by him, will be assets of the estate, he may also sue in his representative character. Some American eases throw a doubt over this last question, and hold that he must, under such circumstances , sue in his individual name. It is plain then, that this plaintiff', Campbell, who employed Wilson to collect this money, had a right to sue in his own name in this District as soon as the money became due him, if there was' any such indebtedness, and the statute began to run against them then. Does it make any difference that he afterwards took out letters of administration here? Does that give a new start to the Statute of Limitations and enable him to sue in the character of local administrator even after he has been barred from suing individually ? If so, it would be contrary to the analogies of the law. As a general rule, when the statute has once begun to run, no subsequent transfer of title to the cause of action arrests its operation. Thus, if it has begun to run against a party in his lifetime it continues to run against his administrator; if it has begun to run against an administrator, it will continue to run against an administrator de bonis non, $c. But in this case, a fortiori, it ought to continue, because there has been no transfer of title even, but the same person has held the cause of action all the time, and the most that he can say is that he has acquired the right to sue in either of two ways, instead of only his individual name, as at first. There has been no new *501 cause of action. That has remained the same all the time. It is the same case as if the act of 1812 was still in force and the plaintiff' had the right, as administrator under the .Florida laws, to sue here, and should take out local letters here also, with a view of protracting the' period within which he could sue.
Another question suggests itself, viz., whether, if' the administrator here were a different person from the plaintiff, he could institute a suit here at all. Could he maintain it under the special count ? In this, the declaration avers that Wilson received this money as attorney and counsellor for the plaintiff. The proof is that he received it as attorney and counsellor for another person three years and more before the plaintiff’ existed as administrator. The proof would clearly not sustain the special count in the declaration. How is it as to the common counts ? The only one available would be the count for money had and received. If Mr. Wilson had collected this money in the lifetime of the deceased, or after his death, under a contract had with him in his lifetime, or had collected it without any authority, the law would call it money had and received for the use of the deceased, or his administrator as such, and perhaps any administrator who could give a discharge might sue for it as money had and received.
But when it appears that the money was received under an express contract with the Florida administrator, and expressly for his use, how can it be money had and received for the use of an administrator appointed more than three years afterward ? The action for money had and received cannot be sustained unless it be proved that when the money was received it was ex ceqito et bono the money of the plaintiff claiming it, and that it was received at the time for his use. It is plain, therefore, that this money could not have been received for the use of this local administrator. The express contract by which it was received for the Florida administrator excludes any implied promise to pay to any other person. The former, if anybody, had a right of action for it, and it cannot be due to two different persons. It does not, *502 therefore, appear that if another person than the plaintiff were administrator here he could have maintained the action. The plaintiff', then, does not benefit himself by describing himself as administrator under the laws of the District. That might be rejected as surplusage, and he might recover as an individual if there were no bar to that recovery ; but as an individual he is clearly barred by the defence of limitations.
The judgment is therefore affirmed.