[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: APPLICATION FOR DECLARATORY JUDGMENT (DOCKET ENTRY NO. 102)
Nicholas Cavallaro, a plaintiff, entered into a structured settlement agreement (hereinafter settlement agreement) resulting from a claim for personal injuries. (See Defendant's Exhibit A, Settlement Agreement and Release, ¶¶ A and C.) The settlement agreement provided that SAFECO Insurance Company (hereinafter SAFECO), a defendant, was to pay Cavallaro $701.80 for 120 consecutive months beginning November 25, 1996. CT Page 14985 (Defendant's Exhibit A, Settlement Agreement and Release, ¶ 2b.) On the same day, SAFECO assigned its liability to make the periodic payments (hereinafter assignment agreement) to SAFECO Assigned Benefits Service Company (hereinafter SABSCO), a defendant. (Defendant's Exhibit B, Qualified Assignment and Release, ¶ 1.) Cavallaro was a party to the assignment agreement (Defendant's Exhibit B, Qualified Assignment and Release, ¶ 11.) The assignment agreement provided that SABSCO may fund the payments by purchase of a "qualified funding asset" within the meaning of section 130(d) of the Internal Revenue Code from SAFECO Life Insurance Company (hereinafter SAFECO Life), a defendant. (Defendant's Exhibit B, Qualified Assignment and Release, ¶ 6.)
Both the settlement agreement and assignment agreement attempt to prohibit Cavallaro's assignment of the right to receive payments. The settlement agreement contains a clause that reads: "The Claimant shall have no power to sell, mortgage, encumber, or anticipate the payments in whole, or part, by assignment or otherwise." (Defendant's Exhibit A, Settlement Agreement and Release, ¶ 3.) The assignment agreement provides: "None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned, or encumbered." (Defendant's Exhibit B, Qualified Assignment and Release, ¶ 3.)
On February 10, 1999, Cavallaro entered into an agreement with Stone Street Capital, Inc. (hereinafter Stone Street), a plaintiff, to receive a lump sum payment of $22,577.00 in exchange for assignment to Stone Street of the right to receive forty-eight of the periodic payments. (Plaintiff's Exhibit 1, Periodic Payment Right Purchase Agreement, Exhibits A and B.) Pursuant to General Statutes § 52-225f, the plaintiffs, Cavallaro and Stone Street, subsequently brought an application seeking a declaratory judgment allowing the assignment of the periodic payments. The defendants, SAFECO, SABSCO and SAFECO Life, oppose the application.
"The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." General Statutes 52-29 (a); see also Practice Book § 17-55. "The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a CT Page 14986 substantial question in dispute or a substantial uncertainty of legal relations between the parties . . . and to make certain that the declaration will conclusively settle the whole controversy." (Citations omitted; internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27, 33, 653 A.2d 168
(1995).
 I. Standing
The defendants first claim that Stone Street lacks standing to pursue this action. "`It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment.' . . . `A party pursuing declaratory relief must . . . demonstrate, as in ordinary actions, a "justiciable right" in the controversy sought to be resolved, that is, "contract, property or personal rights . . . as such will be affected by the [court's] decision. . . .'" `When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded.'" (Citations omitted.) Steeneckv. University of Bridgeport, 235 Conn. 572, 578-79, 668 A.2d 688
(1995).
 A. Statutory Standing
The defendants argue that Stone Street lacks standing under the statute. Here, the action is brought pursuant to General Statutes § 52-225f (c)(1), which provides in relevant part that a "payee entitled to receive payments under such structured settlement shall commence a declaratory judgment action. . . ." Pursuant to § 52-225f (a)(4): "`Payee' means an individual who is receiving payments under a structured settlement and proposes to make a transfer of payment rights thereunder. . . ." Here, Cavallaro is the individual who is currently receiving payments under a structured settlement. Stone Street is not a payee, and therefore lacks statutory standing to pursue this action. See Steeneck v. University of Bridgeport, supra,235 Conn. 586 (where a statute authorized specific parties to challenge ultra vires acts of a corporation, one who was not an authorized party did not have statutory standing).
 B. Common Law Standing CT Page 14987
Stone Street argues that even if it does not have statutory standing, it is still entitled to bring this action under a theory of classical aggrievement. "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Citation omitted; internal quotation marks omitted.) Steeneck v. University of Bridgeport, supra,235 Conn. 579.
Stone Street argues that the court's determination will directly affect its substantive contract and property rights. Although approval of the transfer of the structured settlement payments will authorize Stone Street to enter into the contract with Cavallaro, the court is of the opinion that Stone Street does not have a legal interest in the matter for the purposes of this declaratory judgment action.
According to General Statutes § 52-225f (c)(1), the court must approve the transfer of the structured settlement payments prior to the transfer. See General Statutes §52-225f (c)(1). Therefore, Stone Street's contractual interest will only arise if the court approves the transaction. Moreover, under the statute, the court must consider the interests of all the "interested parties." See General Statutes § 52-225f (c) (1). "Interested parties" are: "the payee, any beneficiary designated to receive payments after the payee's death or, if the designated beneficiary is a minor, the designated beneficiary's parent or guardian, the annuity issuer and the structured settlement obligor . . ." General Statutes §52-225f (a)(3). Because Stone Street is not an "interested party," the court is not empowered to consider Stone Street's interests. Therefore, Stone Street does not have a legal interest that can be resolved by this action. Accordingly, the court concludes that Stone Street lacks standing to bring the present action.[1]
CT Page 14988
 II. Assignment of the Settlement Agreement
General Statutes § 52-225f (b) provides in pertinent part:
 "No transfer of structured settlement payment rights, either directly or indirectly, shall be effective by any payee domiciled in this state . . . unless . . . such transfer has been approved by a court pursuant to subsection (c) of this section."
Subsection (c) in turn provides in relevant part:
 "Prior to any transfer, the payee entitled to receive payments under such structured settlement shall commence a declaratory judgment action under section 52-29 for a determination as to whether the transfer of such structured settlement payment rights is in the best interests of the payee and is fair and reasonable to all interested parties under all of the circumstances then existing. . . . If the court determines, after hearing, that such transfer should be allowed, it shall approve such transfer upon such terms and conditions as it deems appropriate." General Statutes § 52-225f (c)(1).
Here, there are clauses in the contracts that attempt to prohibit assignment by the payee of the right to receive payments. The court must determine the effect of General Statutes § 52-225f on the anti-assignment clause.
 A. The Connecticut Uniform Commercial Code
The threshold issue is whether the Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq. applies to the anti-assignment clauses at issue. The plaintiff argues that §42a-9-318 (4) of the UCC applies to Cavallaro's proposed assignment of his right to receive payments under the annuity to render the anti-assignment clauses unenforceable.[2] The defendants argue that Article 9 of the UCC does not apply to the anti-assignment clauses in the present agreements.
General Statutes § 42a-9-102 (1)(a) provides in pertinent part: CT Page 14989
 "Except as otherwise provided in section 42a-9-104 on excluded transactions, this article applies (a) to any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures, including goods, documents, instruments, general intangibles, chattel paper or accounts. . . ." (Emphasis added.)
The plaintiff argues that the right to receive payments under the structured settlement agreement is a general intangible. The defendant argues that the right to receive payments under the settlement agreement is excluded from Article 9 under §42a-9-104 (k) as a "claim arising out of tort," and therefore is not a general intangible under § 42a-9-102.[3] However, assuming, arguendo, that the right to receive payments is a general intangible, the plaintiff's argument nonetheless fails. The plaintiff has petitioned the court for approval of the sale of the right to receive payments. (See Plaintiff's Exhibit 1, Periodic Payment Right Purchase Agreement, ¶¶ 1.1 and 4.11.)[4] The plaintiff does not seek to create a security interest in the payment right.[5] Accordingly, the present. transaction is not within the scope of Article 9 of the UCC.
 B. Common Law
The next issue is whether the anti-assignment clause at issue would be upheld as valid under Connecticut case law. The plaintiffs cite § 322 of the Restatement (Second) of Contracts and New York and New Jersey case law for the position that anti-assignment clauses are to be strictly construed because these provisions constitute unreasonable restraints on the alienation of property. The plaintiff argues that unless the anti-assignment clause contains an express provision that any assignment is void or invalid, any subsequent assignment of the contract is valid. The defendants argue that anti-assignment provisions are generally upheld under Connecticut caselaw.
The Restatement (Second) of Contracts provides in pertinent part:
 "(2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,. . . (b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective; (c) is CT Page 14990 for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor of the obligor from discharging his duty as if there were no such prohibition. (Emphasis added.) 3 Restatement (Second) of Contracts § 322(2)(b) and (c) (1981).
"The parties' contrary intention as referred to . . . [in § 322] may be manifested in the express language of the contractual provision. . . . To reveal the intent necessary to preclude the power to assign, or cause an assignment violative of contractual provisions to be wholly void, such clause must contain an express provision that any assignment shall be void or invalid if not made in a certain way. . . . Otherwise, the assignment is effective, and the obligor merely has a right to damages." (Citations omitted.) Garden State Buildings v. FirstFidelity, 305 N.J. Super. 510, 521-22, 702 A.2d 1315, cert. denied, 153 N.J. 50, 707 A.2d 153 (1998); see also UniversityMews Associates v. Jeanmarie, 471 N.Y.S.2d 457, 461, 122 Misc.2d 434
(Sup. 1983).
There appear to be no reported Connecticut cases that rely on § 322 Restatement (Second) of Contracts. Rather, Connecticut courts have upheld the validity of anti-assignment clauses in contracts, and declared subsequent assignments invalid. See Lewin Sons, Inc. v. Herman, 143 Conn. 146, 149, 120 A.2d 423 (1956) (anti-assignment agreements are valid); Acton CATV, Inc. v.Wildwood Partners, Ltd., 19 Conn. App. 235, 238, 561 A.2d 976
(1989) (trial court properly found subsequent assignments invalid where agreements contained anti-assignment clauses). However, even under the Restatement (Second) of Contracts § 322, which validates subsequent assignments despite the presence of the anti-assignment clause, the defendant would still be entitled to insist that the anti-assignment provision be enforced prior to the assignment.
Section 322 of the Restatement (Second) of Contracts provides that an anti-assignment provision "is for the benefit of the obligor." 3 Restatement (Second) of Contracts § 322(2)(c). "Judicial holdings sustain overwhelmingly the proposition that a contractual ban on assignment ordinarily serves to protect the obligor alone, and in no way imperils the transaction as between the assignor and assignee. Where a term in a contract prohibits assignment and is not rendered ineffective by statute or otherwise, the term is to be construed, unless a differed intention is manifested,. . . to be for the benefit of the CT Page 14991 obligor, and not to prevent the assignee from acquiring rights against the assignor. . . . The obligor, of course, may gain froma valid and un-waived nonassignability provision the prerogativeto resist or even nullify the assignment. That does not mean, however, that the assignee cannot compel the assignor to stand by his bargain where the obligor has not seen fit to interfere." (Emphasis added.) Fox-Greenwald Sheet Metal Co., Inc. v.Markowitz Bros., Inc., 452 F.2d 1346, 1351 (D.C. Cir. 1971). Accordingly, even under § 322, which provides that subsequent assignments are valid despite the presence of the anti-assignment clause, the presence of the anti-assignment provision entitles the obligor to resist or nullify the assignment prior to the assignment.
 C. General Statutes § 52-225f
The next issue is the effect of General Statutes §52-225f on the enforceability of the anti-assignment clause. The defendants argue that § 52-225f does not apply to settlement contracts that contain valid and enforceable anti-assignment clauses because the legislature did not intend to abrogate bargained-for contractual rights. The plaintiffs rely on Rumbinv. Utica Mutual Ins. Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 64719 (March 2, 1999,Flynn, J.)[6] (Rumbin), to support their argument that the legislature intended the statute to override anti-assignment clauses in settlement agreements. In Rumbin, the court looked to the statements made to the Connecticut Joint Standing Committee, Judiciary, to find that the recipient of a structured settlement, in certain circumstances, may assign the right to the periodic payments despite the presence of an anti-assignment clause. SeeRumbin v. Utica Mutual Ins. Co., supra, Superior Court, Docket No. 64719).[7]
The bill that later became § 52-225f, as it was initially proposed by the insurance industry, required that the payee receive the consent of interested parties prior to assignment of the right to periodic payments. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1998 Sess., p. 725-26. The judiciary committee received testimony from the Connecticut Trial Lawyers' Association expressing concern that this provision essentially gave the insurance company an absolute right to prohibit assignment. Conn. Joint Standing Committee Hearings, supra, p. 727. The trial lawyer's representative observed: "There are instances where a plaintiff needs to sell a structured CT Page 14992 settlement. There are instances such as emergency medical care that wasn't anticipated . . . or other immediate expenses . . . so that there may be justification under certain circumstances for the selling of a structured settlement for a lump sum at a substantial discount." Conn. Joint Standing Committee Hearings, supra, p. 727. The representative from the trial lawyers' association argued that there should be a provision allowing the plaintiff to go to court to obtain judicial permission to assign the payments. See Conn. Joint Standing Committee Hearings, supra, p. 727.
The representative from the Insurance Association of Connecticut brought to the judiciary committee's attention that the insurance association was concerned about the potential adverse tax consequences to insurance companies should the payee of a structured settlement agreement assign the right to receive payments. See Conn. Joint Standing Committee Hearings, supra, p. 785. In a written statement in support of the bill, the insurance association cited potential adverse tax consequences as the reason that most structured settlement agreements contain anti-assignment clauses. Conn. Joint Standing Committee Hearings, supra, p. 907.
The statute, as codified, no longer contains a requirement that the payee must receive consent from the interested parties prior to assignment. See General Statutes § 52-225f. Rather, § 52-225f requires a court to determine whether the assignment is in the best interests of the payee and is reasonable to all interested parties. See General Statutes §52-225f.
The court in Rumbin stated: "The present P.A. 98-238 is an intended compromise effort to ensure that, in certain circumstances, the payee could transfer the rights to certain payments from a structured settlement in return for a lump sum payment. The legislation provides not only that the payee seeks the court's approval, but also requires the third party to disclose certain information to all parties, involved.
"The court believes that the legislature's intent in enactingP.A. 98-238 would be undermined if that statute were interpreted as referring only to those settlement agreements that allow for the assignment or transfer of payments to a third party. The fact that most structured settlements contain language prohibiting any assignment would frustrate the legislature's intent in creating a CT Page 14993 mechanism that allows, at the very least, an opportunity for the payee to assign structured settlement payments to a third party."Rumbin v. Utica Mutual Ins. Co., supra, Superior Court, Docket No. 64719. Accordingly, the court will follow Rumbin and hold that § 52-225f is intended to apply to situations where the contract between the parties contains an anti-assignment provision, and is not limited to cases where the underlying structured settlement agreement allows assignment. See Rumbin v.Utica Mutual Ins. Co., supra, Superior Court, Docket No. 64719.[8]
The court must determine "whether the transfer of such structured settlement payment rights is in the best interests of the payee and is fair and reasonable to all interested parties under all of the circumstances then existing. . . . If the court determines, after hearing, that such transfer should be allowed, it shall approve such transfer upon such terms and conditions as it deems appropriate." General Statutes § 52-225f (c)(1). "Interested parties" are: "the payee, any beneficiary designated to receive payments after the payee's death or, if the designated beneficiary is a minor, the designated beneficiary's parent or guardian, the annuity issuer and the structured settlement obligor. . . ." General Statutes § 52-225f (a)(3).
Cavallaro argues that it is in his best interest to transfer the right to receive payments. He testified that he currently rents an apartment, and that he wants the lump sum in order to buy a condominium. He has borrowed the money for the condominium from a friend, and he wants to use the lump sum to pay back the loan. Cavallaro does not presently work, but he has income from social security benefits, his wife's employment as a nurse and from his father. He testified that he does not rely upon the monthly payments from the structured settlement agreement to pay for his necessities, but that he and his wife spend the $701.80 monthly check on entertainment expenses. Cavallaro further testified that he understood that the discount rate he would receive from Stone Street would be approximately 22 percent.
In Rumbin v. Utica Mutual Ins. Co., supra, Superior Court, Docket No. 64719, the court found that, in enacting §52-225f, the legislature sought to assure that the recipients of structured settlements have immediate access to funds should there arise an unanticipated financial hardship or emergency situation. See id. In Rumbin, the court approved a transfer of the right to receive payments in return for a lump sum payment CT Page 14994 that the plaintiff needed to deal with an unanticipated loss of income and to keep his home from being foreclosed. See id. Here, Cavallaro has not demonstrated that he has an immediate financial need for the lump sum payment. He does not argue that his financial situation has changed in a way to require that he needs to acquire a large sum immediately. However, in light of the fact that Cavallaro wants to use the money to facilitate the buying of a condominium so that he no longer needs to rent an apartment, and that he understands that the discount rate is approximately 22 percent, the court concludes that the assignment of the payments would be in Cavallaro's "best interests."
The court must also conclude that the transfer is fair and reasonable to all interested parties, including the annuity issuer and structured settlement obligor. General Statutes §52-225f (a)(3) and (c)(1). The defendants argue that to permit assignment would result in the potential loss of favorable tax treatment, which should not be allowed because it would materially increase the risk of the contract to the defendants. Also, the defendants assert that to invalidate the clause would abrogate their common-law contractual rights.
The plaintiff argues that under Western United Life AssuranceCo. v. Hayden, 64 F.3d 833 (3d Cir. 1995), the invalidation of the anti-assignment clause is not likely to result in the loss of a tax benefit. In Western, the court did not find support for the "novel proposition" that a transfer of structured settlement payments would result in the loss of tax benefits. See id., 842. The defendants do not cite any authority that states conclusively that they would suffer adverse tax consequences. However, under the Internal Revenue Code, there is a risk that the defendants would suffer adverse tax consequences if the court were to allow assignment by the payee. See Grieve v. General American LifeInsurance Co., United States District Court for the District of Vermont, Docket No. 2:98-CV-57 (June 7, 1999) (a change of recipient would result in the annuity obligor's loss of eligibility for the favorable tax treatment in I.R.C. § 130).
Section 130(a) of the Internal Revenue Code provides in pertinent part: "Any amount received for agreeing to a qualified assignment shall not be included in gross income. . . ." Section 130(c) further provides in pertinent part that "the term `qualified assignment' means any assignment of a liability to make periodic payments as damages . . . on account of personal injury or sickness . . . if . . . such periodic payments cannot CT Page 14995 be accelerated, deferred, increased, or decreased by the recipient of such payments . . . [and] such payments are excludable from the gross income of the recipient under paragraph (1) or (2) of section 104(a)."
Section 104(a)(2) of the Internal Revenue Code provides in pertinent part that gross income does not include "the amount of any damages . . . received . . . on account of personal physical injuries or physical sickness." I.R.C. § 104(a)(2). If the payee were to transfer his right to payment to a third party, the lump sum received would be considered damages received within the meaning of § 104(a)(2) of the code. See Rev. Rul. 79-220, 1979-2 C.B. 74 (the lump sum payment is received as damages within the meaning of § 104(a)(2) if the recipient has actual or constructive receipt or the economic benefit of the lump sum payment). However, any subsequent payment to a different party would not be damages within the meaning of § 104(a) (2) because it would be a contractual payment created by the recipient's assignment of the right to receive payments. Cf. Rev. Rul. 79-220, 1979-2 C.B. 74 (the income earned upon the lump sum is not received as damages within the meaning of section 104(a) (2)). Therefore, the assignment of the right to receive payments would cause the insurance company to lose its eligibility for favorable tax treatment under § 130. See I.R.C. § 130(c) (D) (the periodic payments must be excludable from the gross income of the recipient under § 104); see also Grieve v.General American Life Insurance Co., supra, United States District Court for the District of Vermont, Docket No. 2:98-CV-57.
Moreover, it is possible that such an assignment would also constitute an acceleration of the payments. See Rev. Rul. 79-220, 1979-2 C.B. 74 (the lump sum payment is received as damages within the meaning of § 104(a)(2) if the recipient has actual or constructive receipt or the economic benefit of the lump sum payment). If the assignment of the payments is an acceleration of the payments, the assignment of the liability would no longer qualify as a "qualified assignment." See I.R.C. § 130(c).
Although the court is not certain that the defendants would in fact suffer adverse tax consequences, the court is satisfied that there is a risk of a loss of a tax benefit should the plaintiff assign the right to receive payments. See Grieve v.General American Life Insurance Co., supra, United States CT Page 14996 District Court for the District of Vermont, Docket No. 2:98-CV-57. Accordingly, to interpret § 52-225f to nullify the anti-assignment clause would materially increase the risk imposed on the defendants by the contract. See Johnson v. First Colony LifeIns. Co., 26 F. Sup.2d 1227, 1229 n. 4 (C. D. Cal. 1998) (the payee may not void the anti-assignment clause because of the obligor's risk of a loss of favorable tax treatment).
The Restatement (Second) of Contracts recognizes the validity of assignments, with three exceptions. "A contractual right canbe assigned unless (a) the substitution of a right of the assignee for the right of the assignor would materially change the duty of the obligor, or materially increase the burden orrisk imposed on him by his contract, or materially impair his chance of obtaining return performance, or materially reduce its value to him, or (b) the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy, or (c)assignment is validly precluded by contract."[9] (Emphasis added.) 3 Restatement (Second) of Contracts § 317.[10] Here, the assignment is validly precluded by contract. Moreover, as previously discussed, assignment of the right to receive payments would materially increase the burden or risk imposed on the obligor by the settlement contract. Accordingly, to allow assignment would abrogate the defendants' common-law contractual rights.
Under § 52-225f, the assignment must be fair and reasonable to all interested parties, including the defendants in this case. See General Statutes § 52-225f (a)(3) and (c) (1). Although the plaintiff has demonstrated a desire to buy a home, which is likely in his best interests, the court concludes that it would be unreasonable and unfair to allow assignment. The plaintiff has not shown a reason for the assignment that comports with the purpose of the statute, which is to provide emergency assistance to those payees of a structured settlement agreement that are in immediate financial need. See Rumbin v. Utica MutualIns. Co., supra, Superior Court, Docket No. 64719. Because the plaintiff has not demonstrated the requisite need for this assistance, the court would be hesitant to condone a transaction where the defendants would take on the risk of potential adverse tax consequences, and where the terms of the contract would be abrogated. Therefore, the court will not allow the assignment of the right to receive payments under the settlement agreement.
For the foregoing reasons, the court denies the application CT Page 14997 for declaratory judgment.
SKOLNICK, J.